UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LAWRENCE R. BURFITT,   Case No. 1:19-cv-781

    Plaintiff,   Barrett, J.
                                       Bowman, M.J.
    v.

BRION LAWLESS, et al.,

    Defendants.

**REPORT AND RECOMMENDATION**

Plaintiff Lawrence Burfitt, proceeding *pro se* and *in forma pauperis*, is a prisoner at Toledo Correctional Institution ("ToCI") in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC"). (Doc. 3, Complaint, at 3). On September 13, 2019, Plaintiff filed a Complaint against Defendants Lawless, Mahlman, Haywood, Bowers, and Parish. (*Id.* at 1). Plaintiff asserts that while incarcerated at Southern Ohio Correctional Facility ("SOCF"), Defendant SOCF employees' use of force, retaliation, and deliberate indifference violated his First and Eighth Amendment rights under the United States Constitution. (*Id.* at 9-10). Plaintiff's claims against Defendants Mahlman and Parish, and official capacity claims against Defendants Lawless, Haywood, and Bowers were dismissed. (*See* Doc. 4, Order and Report and Recommendation, at 10; Doc. 5, Order, at 1-2). Plaintiff's First Amendment retaliation and Eighth Amendment deliberate indifference claims now proceed against Defendant Lawless in his individual capacity, and Plaintiff's Eighth Amendment excessive force claim proceeds against Defendants Haywood and Bowers in their individual capacities. (Doc. 14, Amended Complaint, at 1).

1

Pursuant to local practice, Defendant Lawless' Motion for Summary Judgment (Doc. 24), Plaintiff's opposition thereto (Doc. 26), and Defendant's Motion to Strike (Doc. 27) have been referred to the undersigned magistrate judge for initial consideration and a report and recommendation. 28 U.S.C. § 636(b).

### I. Factual Background

Plaintiff asserts that in response to filing multiple complaints about Defendant Lawless destroying Plaintiff's legal work, Lawless retaliated against Plaintiff resulting in Plaintiff getting sent to "the hole." (Doc. 4 at 5). Plaintiff was released from the hole to his cell in general population on May 28, 2018. (Doc. 14 at 8). That day, Defendant Lawless and a non-defendant nurse were doing a pill call on Plaintiff's cell block. (*Id.*). Plaintiff claims that Lawless targeted him and yelled "they let this snitch back on the block" in reference to Plaintiff's release from the hole, and that Lawless yelled "this fuck stick doesn't get meds" as he passed Plaintiff's cell. (*Id.*). Plaintiff claims that this "pushed [him] to [his] limit when he kept harassing me that day." (*Id.*). Indeed, Plaintiff claims that "Defendant [L]awless has a history of retaliating against me for using my protected right to file complaints on corrections officers." (*Id.* at 10). When Lawless and the nurse returned to Plaintiff's cell to distribute his medication, Plaintiff "swallow[ed] a bunch of pills and staples" in front of them "to force their hand." (*Id.*). According to Plaintiff, Defendant Lawless "continue[d] to direct taunts at me while they slowly continue[d] to do pill call." (*Id.*). Plaintiff further alleges that Defendants Haywood and Bowers, two SOCF officers, approached his cell and ordered Plaintiff to place his "arms out my bars and cuff up." (*Id.*). Plaintiff asserts he told Heywood and Bowers that he "felt threatened like they were going to jump on me once I cuffed up." (*Id.*). According to Plaintiff, Heywood and Bowers derided

2

Plaintiff and sprayed him with mace (*Id.*). Plaintiff alleges that his refusal to follow orders "compell[ed] officials to extract me" (*Id.* at 10). Plaintiff was later taken to a hospital for treatment. (*Id.*).

Inmate grievances at SOCF are governed by a process codified in Ohio Adm. Code 5120-9-31. (*See* Doc. 24, Ex. A, Mahlman Affidavit, at 7). Inmates in the custody of ODRC are provided written and oral instructions on how to use the inmate grievance procedure, including filing grievances with the Institutional Inspector, to the Office of the Chief Inspector, and filing direct grievances with that office. (*Id.* at 5). The grievance process consists of three steps. First, an inmate must file an informal complaint ("ICR") with the direct supervisor of the staff member or department directly responsible for the subject matter of the complaint within fourteen days of the event. Ohio Admin. Code § 5120-9-31(J)(1). Second, if the inmate is dissatisfied with the institutional response, the inmate may file a Notice of Grievance with the inspector of institutional services who must provide a written response to the grievance within fourteen days. *Id.* at § 5120-9-31(J)(2). Third, if dissatisfied with the disposition of his grievance, the inmate may file an appeal with the office of the chief inspector. *Id.* at § 5120-9-31(J)(3).

On May 31, 2018, Plaintiff submitted an ICR, SOCF-06-18-0002[1], to a mental health staff member to report Defendant Lawless' alleged retaliatory conduct. (Doc. 24, Def.'s Ex. C at 15; Doc. 26, Pl.'s Ex. D at 11). That staff member informed him that he incorrectly submitted the ICR to mental health, that the ICR must be sent to Lawless' direct supervisor. (Doc. 26, Pl's Ex. C at 11). On June 1, 2018 the SOCF inspector

---

[1] While the ICR is dated "5, 27, 18" and refers to an incident on May 26 with Defendant Lawless, the timestamp on the ICR and the inmate Grievance History submitted by Plaintiffs indicate that the ICR was submitted on May 31, 2018. (Doc. 24 at 15; Doc. 26 at 11).

3

received the ICR. Plaintiff subsequently filed a Use of Force Statement to report Lawless' conduct. On June 7, 2018, when the Use of Force Committee interviewed Plaintiff, he wrote "no statement, reserved for civil action(s)". (Doc 24, Ex. B at 11-12).

Linnea Mahlman, the SOCF institutional inspector and custodian of inmate grievances, attests that Plaintiff did not appeal any of his grievance denials to the Chief Inspector's Office. (Doc. 24, Ex. A at 9). Interestingly, Mahlman also attests that Plaintiff "filed a grievance for retaliation with the institution following the May 28, 2018 incident but it did not name Bryant Lawless." (*Id.* at 10). Defendants also submit a copy of plaintiff's institutional grievance history. (Doc. 24, Inmate Grievance History for Lawrence Burfitt, Def.'s Ex. C at 13). This grievance history shows that on May 31 and June 14, 2018, Plaintiff did submit ICRs concerning other issues. (*Id.* at 15).

In response, Plaintiff argues that the retaliatory conduct of Defendant Lawless and SOCF officials rendered the grievance procedure unavailable to Plaintiff following the May 28, 2018 incident. (Doc. 26. at 2-3). In support, Plaintiff submits exhibits including copies of ICRs from 2018 that reported Lawless, a copy of his housing movement, and an unsworn declaration made under penalty of perjury. Those ICRs include a February 21 ICR, SOCF-03-18-000013, submitted to the SOCF Deputy Warden regarding a shakedown of Plaintiffs cell alleging that Defendant Lawless attempted to intimidate Plaintiff by saying "this guy likes to assault c/o's . . . then he snitches on us." (Doc. 26, Pl's Ex. A at 5). The Deputy Warden responded that he reviewed the "DUR system" but found "nothing to show that [Plaintiffs] allegations actually happened." (*Id.*). Then on March 20 Plaintiff submitted an ICR, SOCF-03-18-000198, to Sergeant Smoot to report that Lawless: (1) destroyed Plaintiff's legal work during a shake down of his cell, (2) told

4

Plaintiff "[t]his will teach you to write me up you fuckin nigger," and (3) called Plaintiff a "snitch." (Doc. 26, Pl's Ex. B at 6). Plaintiff's grievance history also shows that Plaintiff submitted numerous ICRs to report intimidation, a lack of access to his legal property, and property destroyed or confiscated by SOCF staff. (Doc. 24, Def.'s Ex. C. *at* 15). In his declaration, Plaintiff attests that he was placed in "the hole" in response to a kite request for a grievance whereupon Plaintiff drew a knife through an officer's name and "mentioned the 1993 riot being the best thing that happened to them." (Doc. 26, Declaration of Lawrence Burfitt, at 14). He also asserts that after the incident on May 28, 2018, he was "moved multiple times and suppressed from kites and informal complaints" and that his "cell was shaken down everytime [he] went to the shower or to see mental health." (*Id.*). Finally, Plaintiff submits his movement history in SOCF, which confirms that he was moved approximately five times in two weeks following May 28, 2018. (Doc. 26, Lawrence Burfitt Movement History, Pl.'s Ex. D at 9).

## II. Analysis

### A. Summary Judgment Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the nonmoving party has met

5

its burden of production, the nonmoving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the nonmoving party's position will be insufficient; the evidence must be sufficient for a jury to reasonable find in favor of the nonmoving party. *Id.* at 252.

In ruling on a motion for summary judgment, "[a] district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989) *cert. denied*, 494 U.S. 1091 (1990); *see also L.S. Heath & Son, Inc. v. AT&T Information Sys., Inc.*, 9 F.3d 561 (7th Cir. 1993). Thus, a court is entitled to rely—in determining whether a genuine issue of material fact exists on a particular issue—only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties. *Beatty v. UPS*, 267 F.Supp.2d 823, 829 (S.D. Ohio 2003), *aff'd*, 2004 U.S.App. LEXIS 13864 (6th Cir. 2004).

Under the foregoing standard, the undersigned finds that Defendants are not entitled to summary judgment.

### B. Exhaustion of Administrative Remedies

Defendants argue that summary judgement is proper because Plaintiff failed to exhaust administrative remedies for all surviving claims before filing this claim in compliance with the Prison Litigation Reform Act of 1995. Defendants contend that

Plaintiff only completed the first of the three steps required for his retaliation claim, and that he failed to submit grievances for the use of force or the failure to treat his medical needs. (Doc. 24 at 6).

In response, Plaintiff asserts that the grievance process was unavailable to him, that he "would not have filed the first ICR if the porter didn't give [him] one behind the [correction officer]'s back," was "moved eight times in the matter of a week," and his cell was "subtly tampered with and other times ra[n]sacked" when he showered or saw the mental health staff. (Doc. 26 at 3).

The Prison Litigation Reform Act of 1995 ("PLRA") mandates early judicial screening of prisoner complaints filed in federal court and requires prisoners to exhaust prison grievance procedures before filing suit. *Jones v. Bock*, 549 U.S. 199, 202 (2007). The exhaustion provision of the PLRA states "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A prisoner's failure to exhaust administrative remedies is an affirmative defense. *Jones*, 549 U.S. at 216. Further, "exhaustion is mandatory under the PLRA and [] unexhausted claims cannot be brought in court." *Id.* at 211. Moreover, the PLRA demands "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Proper exhaustion requires compliance with "an agency's deadlines and other critical procedural rules" so the adjudicative system can function effectively. *Id.* at 90-91.

However, an inmate's obligation to exhaust hinges on the availability of administrative remedies. *Ross v. Blake*, 136 S.Ct. 1850, 1853 (2016). There are three

7

circumstances in which an administrative remedy, although officially available, is not capable of use to obtain relief: (1) an administrative procedure is unavailable when it operates as a "simple dead end," with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) an administrative scheme might be so opaque it becomes practically incapable of use to the ordinary prisoner; and (3) a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through "machination, misrepresentation, or intimidation." *Id.* at 1853-54.

The Sixth Circuit has excused an inmate's failure to exhaust "when the improper actions of prison officials render administrative remedies functionally unavailable." *Himmelreich v. Fed. Bureau of Prisons*, 766 F. 3d 576, 577 (6th Cir. 2014), *aff'd sub nom. Simmons v. Himmelreich*, ––– U.S. –––, 136 S. Ct. 1843, 195 L.Ed.2d 106 (2016). In cases of harassment and retaliation "the question is whether prison officials took an adverse action 'that would deter a person of ordinary firmness from' continuing with the grievance process". *Does 8–10 v. Snyder,* 945 F.3d 951, 961 (6th Cir. 2019) citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999). "Thus, unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should" survive summary judgement. *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). In *Bell*, the Sixth Circuit held that evidence showed prison officials "twice left plaintiff's cell in disarray, confiscated his legal papers without returning him, and stole [the plaintiff's] medical snacks" satisfied the adverse action test. *Id.* at 605. And in *Snyder*, the Sixth Circuit reversed the district court's grant of summary judgement for failure to exhaust when the plaintiff alleged that prison officials "read his legal mail, destroyed his personal property, and called him a rape

8

victim over the loudspeaker (thus exposing him to further threats and harassment from inmates who would think that Doe 9 was a 'rat' for reporting)." *Snyder*, 945 F.3d at 967.

Defendants are not entitled to summary judgement based upon Plaintiff's failure to exhaust because, at the least, they have not carried their burden to "establish the absence of a genuine dispute of material fact on the issue." *Snyder,* 945 F.3d at 967. If Plaintiff's allegations of retaliatory conduct are true, then like the adverse actions in *Snyder*, the adverse actions Plaintiff has described would "'deter a person of ordinary firmness from proceeding through the grievance process.'"

Defendants' respond to Plaintiff's allegation of retaliation and contend that Plaintiff's grievance history and the timely ICR following the May 28, 2018, incident show that the grievance procedure was available. (Doc. 27 at 5). Further, Defendants contend that neither Plaintiff's security status nor his movement within the institution prevented him from accessing grievance forms. (*Id.).* But according to the Sixth Circuit, the mere fact that an inmate "was able to file some grievances does not mean that he was able to file all relevant grievances or that he was not prevented from timely filing the grievances." *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012); *see also Himmelreich*, 766 F.3d at 578 ("we reject the government's argument that Himmelreich's filing of other administrative complaints and the FTCA lawsuit near the time that he claims to have been threatened prevents a finding of intimidation.").

Whether or not Plaintiff was prevented by Defendants from exhausting the available jail grievance procedure remains in dispute. Again, if Plaintiff's claims are true, the retaliation and intimidation would render the grievance process functionally unavailable for a person of ordinary firmness.

9

### C. Motion to Strike Plaintiff's Declaration

Defendant has filed a motion to strike Plaintiff's Declaration asserting that it contains irrelevant, inappropriate, offensive, and threatening language. (Doc. 27 at 3). Pursuant to Rule 12(f), "upon motion made by a party ... the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." In the Sixth Circuit, motions to strike are generally disfavored and should be used only in cases where the material at issue has "no possible relation to the controversy." *Anderson v. U.S.*, 39 F. App'x 132, 135 (6th Cir.2002). A motion to strike "is a drastic remedy to be resorted to only when required for the purposes of justice." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953). Because of the Court's preference to consider the case on its merits, the Defendant's Motion to strike should be denied.

### III. Conclusions and Recommendation

Accordingly, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. 24) and Motion to Strike (Doc.27) be **DENIED.**

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

10

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

LAWRENCE R. BURFITT,                  Case No. 1:19-cv-781

    Plaintiff,                                        Barrett, J.
                                                        Bowman, M.J.
    v.

BRION LAWLESS, et al.,

    Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

11